WILLIAM PERKINS, administrator of WILLIAM R. GAY,

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

CHARLES GAY *vs.* same.

Kennebec.     Opinion February 11, 1881.

*Railroad location.     Land damages.     Waiver.*

Without a deed a railroad location can never become legal except on payment or waiver of the land damages, or by prescription. In no other way can the company acquire legal, permanent possession.

While the lapse of six years from the time an action accrued for land damage might, unexplained, constitute a waiver of damage, yet where the circumstances show that there has been no waiver, and no title acquired by prescription, simple lapse of time would not bar the land owner's right to bring suit against the road for an obstruction which was a continuing trespass, though there would be a limitation of damages to the period of six years, immediately preceding the date of the writ.

ON REPORT.

Trespass.    The law court to render such judgment in each case as the law and admissible evidence require.

The opinion states the case.

*H. S. Webster*, for the plaintiff, cited : *Cushman* v. *Smith*, 34 Maine, 247 ; *Davis* v. *Russell*, 47 Maine, 443 ; 1 Chitty Pl. 544 ; *Burnham* v. *Ellis*, 39 Maine, 319 ; *Franklin Bank* v. *Cooper*, 39 Maine, 542 ; *Cook* v. *Stearns*, 11, Mass. 533 ; 1 Wash. R. P. c. 12 § 2, and cases cited.

*G. C. Vose*, for the defendant.

"Private rights, not under the shield of the organic law, must yield when they come in conflict with public necessity, or the general good. The maxim, *salus populi suprema lex*, has an important meaning in its application to private rights, and in limiting the absoluteness of any possible ownership of private property." 2 Dillon Mun. Corp. 552.

It is incident to the sovereignty of every civilized government that it may take private property, for public uses; of the necessity or expediency of which the government alone must judge. *Cooper* v. *Williams*, 4 Ham, (Ohio), 253 ; *Perry* v. *Wilson*, 7 Mass. 395 ; *Boston Mill Dam* v. *Newman*, 12 Pick. 467 ; *Spring* v. *Russell*, 7 Greenl. 273 ; 1 Baldwin, 220 ; 1 U. S. Dig. 560.

This power of the legislature is limited only by the constitution, which in our State simply provides that private property shall not be taken for public uses without just compensation.

"If the organic law of the State does not prescribe the mode of procedure, in estimating land damages, for the use of a railroad company, or other public work, it is competent for the legislature to do so." Red. Railways, 2d ed. 139, 140. This our legislature did by the general railroad law of 1876.

The building of a railroad by a private corporation under authority of the legislature for the accommodation of the public, is a public use for which private property may be taken. *Walton* v. *Warren et al.* 25 Mo. 277.

The road was legally located, and by the location and subsequent acts the company, we contend, took a perpetual easement for the purposes authorized by their charter. The language of the statute clearly implies that the compensation is not a condition precedent to the right of taking actual possession of the land for the purposes authorized by the charter. *Smith* v. *Holmes*, 7 Barb. 426 ; *Bloodgood* v. *M. & H. R. R. Co.* 18 Wend. 17 ; *Rogers* v. *Bradshaw*, 20 Johns. 735 : *Davis* v. *Russell*, 47 Maine, 446.

Seth Gay was a resident of Gardiner and knew of the construction of the road over his land as it progressed. He suffered the company to proceed and expend large sums of money in

constructing the road without interference or objection, and thus waived such claim, if any, as he might have had. *Barre Turnpike Cor.* v. *Appleton*, 2 Pick. 430; *Ipswich* v. *Essex*, 10 Pick. 519; *Merrill* v. *Berkshire*, 11 Pick. 269.

Seth Gay or his executor might have sued and recovered all the damages which were sustained by the property (if any) whether at the time or in the future. This being so, the right of action was in him for the recovery of all damages, and this right of action would not pass to one who takes by purchase. *Chicago & Alton R. R.* v. *Maher*, 8 Law Reporter, 495; *Ill. Central R. R.* v. *Grabill*, 50 Ill. 241.

Twenty-five years have elapsed since the expiration of the three years within which an application for assessment of damages might have been made before the commencement of these actions. *Forester* v. *Cumberland Vaelly R. R.* 23 Penn. 371.

Judge Redfield in his work on railways, 2d edition, page 183, says, "when neither the general statutes nor the special act contain any specific limitation in regard to claims upon railway companies, for land damages, it is held that the general statute of limitations of actions, for claims of a similar character, will apply. One who is disseized can maintain trespass for no act subsequent to that which ousted him from the premises, until he re-enters." *Taylor* v. *Townsend*, 8 Mass. 415; *Shephard* v. *Pratt*, 15 Pick. 34; *Starr* v. *Jackson*, 11 Mass. 519; *Brown* v. *Ware*, 25 Maine, 411.

The company have had possession in fact of this location since 1849, and this action cannot be maintained against one for acts done on premises of which he has been in possession more than six years. *Bradford* v. *Cressey*, 45 Maine, 15; *Abbott* v. *Abbott*, 51 Maine, 575; *Allen* v. *Thayer*, 17 Mass. 299.

The plaintiff, to maintain this action, must have possession *in fact.*

SYMONDS, J. The location of the Kennebec and Portland railroad across the land in controversy was filed in the office of the commissioners for Kennebec county on January 5, 1848. Seth Gay then owned the land, and till his death in March, 1851.

Thomas Gay and Wm. R. Gay were the devisees of his real estate. Thomas Gay died in September, 1852, leaving his lands by will to William R. who thereby became sole owner of the *locus in quo;* and on his death, September 4, 1874, his will gave to Charles Gay a life estate therein.

The railroad was located within the time and substantially according to the description in the charter. It was in process of construction at this place in 1849, and was open for travel in the fall of 1851.

It is conceded that the defendant corporation for the purposes of this case may be regarded as representing the companies which preceded it in the occupation of the road, having succeeded by consolidation, and by lease, to all their rights and liabilities. The case presented, then, is as if the defendant company, having located its road over the premises in dispute in 1848, and built it 1849–1851, had maintained and used it from that time to the date of the writ, without payment of land damages; the land owners until these actions never having pursued any legal remedy to recover them.

It will be observed that the administrator of William R. Gay claims to recover damages for the trespasses alleged from August 25, 1870, to September 4, 1874; that is to say, for that part of the period of six years, immediately preceding the date of the writ, during which his intestate, the sole owner, was living. Charles Gay, to whom a life estate came on the death of William R. claims to recover the damages for trespasses, occurring from the death of William R. to the date of the writ; the trespasses in both instances being alleged as continuing during the whole periods stated. The two actions are included in one report.

The plaintiffs are, or represent, the land owners. Their lands have been taken, or at least the defendants have assumed to take and use them, for public purposes. No compensation has been made. Are the plaintiffs in position to invoke the constitutional guaranty, or have rights been lost by the extraordinary delay in resorting to legal remedy?

It is undoubtedly true that "where a constitutional provision is designed solely for the protection of the property rights of the

citizen, it is competent for him to waive the protection, and to consent to such action as would be invalid if taken against his will."

"The right to compensation, when property is appropriated by the public, may always be waived; and a failure to apply for and have the compensation assessed, when reasonable time and opportunity and a proper tribunal are afforded for the purpose, may well be considered a waiver." Cooley's Const. Lim. 181, 562, and cases.

"When neither the general statutes nor the special act contain any specific limitation in regard to claims upon railway companies for land damages, it is held that the general statute of limitations of actions for claims of a similar character will apply." 1 Redf. Rail. 351.

The general limitation for actions of trespasses on lands in this State is six years. The right of action in cases of this character does not accrue till the expiration of the three years, from location filed, during which the county commissioners have jurisdiction. *Davis* v. *Russell*, 47 Maine, 446. The lapse of that time, three years for the special mode of proceeding, and six years thereafter limited for the common law form of action adopted, without resort to either, we should say would be sufficient evidence of waiver, in any case in which the evidence disclosed nothing to remove the inference naturally to be drawn from the delay. This would be such a neglect to apply for the damages during the whole period of general limitation as, unexplained, "might well be considered a waiver."

It is true that the acts complained of in such case may constitute a continuing trespass, for which, without such waiver, remedy might be sought at any time before a prescriptive right accrued; the maintenance of the obstruction constantly renewing the liability, and the limitation only restricting the damages to six years prior to the date of the writ. But the right to recover the full compensation is complete when the location is filed. A special and adequate method of obtaining an estimate and payment of the damages within three years is provided. When, after that, an action of trespass is brought, and it is found that

the general period of limitation applicable to that action has passed since the acts of trespass began, we think an explanation is required, else the facts imply a waiver of the claim. In this case the three years expired January 5, 1851. Thereupon the liability of the corporation to an action at common law, which had been suspended during the period of the commissioners' jurisdiction, accrued or revived, and might be enforced by any appropriate process; the statutory methods of procedure being cumulative and not exclusive. R. S., c. 51, § 10; *Davis* v. *Russell*, 47 Maine, 446.

Notwithstanding the features of a continuing trespass which the case presents, we think the presumption of waiver arose at the expiration of six years from January 5, 1851, without action brought, unless something appears to show that such delay was consistent with an intention to demand the damage.

But the evidence in this case shows that from the time of the location down to about the date of the writ, there were constant negotiations between the owners of the lot and the companies running the railroad in regard to compensation for the part taken by the location. No application to the commissioners for an estimate of the damages, nor request for the corporation to be required to deposit security therefor, appears to have been made; nor were the damages ever adjusted. But the validity of the plaintiffs' claim was never denied. It was never urged that Seth Gay in his life, nor his successors, had waived it. The acts of the officers of the companies within the scope of their duty and authority, were repeated admissions of liability. No question was ever made except about the amount of the damages, the demands of the land owners in this respect being regarded as exorbitant by the companies.

Under such circumstances, the railroad was a continuing obstruction of the plaintiffs' land without right, in regard to which they only held their action in suspense. The preliminary right of possession, as a step towards acquiring title, became extinct upon unreasonable delay to perfect the proceedings, by an actual payment or tender of compensation for the land taken. For three years to pass without application to the commissioners,

was unreasonable delay, and thereupon the corporation was liable in trespass. *Cushman* v. *Smith,* 34 Maine, 247, 265 ; *Nichols* v. *S. & K. R. R. Co.* 43 Maine, 356 ; *Davis* v. *Russell, supra.*

During the long delay that has since intervened, the corporation has not been asserting an adverse possession, or an adverse right. They have only been disputing about damages. The owners have not been waiving rights. In the protracted effort to settle the amount of damage by agreement, they have simply delayed to bring a suit against the road for an obstruction which was a continuing trespass upon their lands and the maintenance and use of which, without waiver by the land owners, was a constant renewal of liability. We do not perceive that such a state of facts could ever bar the plaintiffs' action, or afford the defendants any benefit, except what they derive from the limitation of the damages to the period of six years immediately preceding the date of the writ. Without deed, the location never could become legal, except on payment or waiver of the land-damage, or by prescription. In no other way could the company acquire legal, permanent possession. There was no payment. The evidence removes the presumption of waiver that might arise from the lapse of time. Upon the facts proved, the character of the defendant's occupation was not such as to mature into a prescriptive right.

The plaintiffs are not seeking in these actions to recover the damages which Seth Gay in his life sustained. The administrator claims, and is entitled to recover the damages which accrued to his intestate during his life, and within the period of limitation, by the permanent obstruction of his lands without legal right. Charles Gay is entitled to recover for similar damage to his life-estate during the period stated in his declaration.

> *Defendants defaulted. Hearing in*
> *damages at Nisi Prius.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.